# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| David C. Vallone,<br>　　　　Plaintiff,<br><br>v.<br><br>Equifax Information Services, LLC;<br>TransUnion, LLC; U.S. Bank National<br>Association; and DOES 1 through 100<br>inclusive,<br><br>　　　　Defendants. | CASE NO. 5:22-cv-410 |

COMES NOW Plaintiff **DAVID C. VALLONE** ("Plaintiff"), an individual, based on information and belief, to allege as follows:

## INTRODUCTION

1. This case arises under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681s-2(b), 1681e(b), 1681i(a)(2)(A), 1681i(a)(4), and 1681i(a)(5)(A). Plaintiff seeks redress for the unlawful and deceptive practices committed by the Defendants in connection with their inaccurate, misleading, or incomplete reporting of Plaintiff's debt.

2. Defendant U.S. Bank National Association ("U.S. Bank") is not reporting Plaintiff's account accurately as paid in full and satisfied.

3. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system and unfair credit reporting methods undermine the public confidence that is essential to the continued functioning of the banking system.

4. Creditors intentionally and routinely ignore both industry standards and FCRA requirements for accurately reporting debt information. Creditors know that deviating from recognized credit reporting standards and FCRA requirements will make it difficult for consumers to raise their credit scores and improve their creditworthiness.

5. This was not the intent of Congress when it enacted the Fair Credit Reporting Act.

## JURISDICTION & VENUE

6. Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

7. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, 1367, and 15 U.S.C. § 1681.

8. This venue is proper pursuant to 28 U.S.C. § 1391(b)(1).

9. Plaintiff alleges that, for purposes of establishing residency under 28 U.S.C. § 1391(b)(1), each named Defendant conducts sufficient business within the forum state and this Court has personal jurisdiction over Defendants under 28 U.S.C. §§ 1391(c)(2) and 1391(d).

## GENERAL ALLEGATIONS

10. Plaintiff alleges that the U.S. Bank account was current, paid in full, and fully satisfied in or about December of 2020, and thus should not be reporting with a past due payment status. Despite the fact the account was satisfied, U.S. Bank is reporting the account as past due which is patently incorrect and misleading.

11. Plaintiff alleges that it is patently incorrect and misleading for a debt which was current, paid in full, and fully satisfied to be reported on a credit report with a payment status of past due as this reporting makes it appear as if the debt is still collectible.

12. Further, the tradeline does not mention the word "paid" anywhere. The past due payment status makes the account appear as if it were closed with an outstanding and past due amount, which is patently incorrect and misleading.

13. In the alternative, if any amount remained unpaid after the December 2020 payment, which Plaintiff denies, then said amount would have been included and discharged in Plaintiff's subsequent Chapter 7 bankruptcy filing. Even under this alternative scenario, Defendant's reporting is patently incorrect and misleading by not reporting the bankruptcy.

14. Plaintiff alleges that each and every Defendant is familiar with the FCRA requirements and subscribes thereto.

15. Plaintiff alleges that each and every Defendant understands that deviation from the FCRA requirements or credit reporting industry standards can, and often does, result in the denial of credit, higher interest rates, and prompts a negative inference that would not be drawn if the data were reported in accordance with the recognized standards.

16. Plaintiff alleges that all of Defendants' actions alleged herein were committed knowingly, intentionally, and in reckless disregard of the unambiguous meaning of the FCRA, regulatory guidelines on accurate reporting, and credit reporting industry standards to purposefully undermine Plaintiff's ability to repair his Credit Score.

17. In the alternative, Plaintiff alleges that each and every Defendants' actions were the result of negligent policies, procedures, and an objectively unreasonable interpretation of the FCRA, all which inevitably led to inaccurate, misleading, or incomplete credit reporting.

## FACTUAL BACKGROUND

18. Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

**A.     FICO, Inc.**

19. FICO is a leading analytics software company with its principal headquarters in San Jose, California. FICO has over 130 patents related to their analytics and decision management technology and regularly uses mathematical algorithms to predict consumer behavior, including credit risk.

20. The FICO Score has become the standard measure of consumer credit risk in the United States and is used in ninety percent (90%) of lending decisions. [1]

21. A FICO Score consists of a three-digit number summarizing a consumer's credit risk or likelihood to repay a loan. FICO periodically updates its scoring models resulting in multiple FICO Score versions.

22. Base FICO Scores range from 300 to 850, while industry specific FICO Scores range from 250-900. A higher FICO Score demonstrates lower credit risk or less likelihood of default.

23. Different lenders use different versions of FICO Scores when evaluating a consumer's creditworthiness.

24. There are twenty-eight (28) FICO Scores that are commonly used by lenders.

25. A consumer's FICO Score is calculated based solely on information in consumer credit reports maintained at credit reporting agencies ("CRAs").

---

[1] While there are other credit scoring models, it is well established that FICO Score is by far the most widely used by lenders, employers, insurance companies, and lessors. *See https://www.myfico.com* (a website created and operated by Fair Isaac Corporation ("FICO"), "the company that invented the FICO credit score").

26. The three largest CRAs are Experian Information Solutions, Inc. ("Experian"); Equifax Information Services, LLC ("Equifax"); and TransUnion, LLC ("TransUnion").

27. FICO does not control what information is provided on a consumer's credit report. Instead, the scoring models, or algorithms, are based on the premise that the information provided by the CRAs is accurate and complies with both the FCRA requirements and credit reporting industry standards.

28. There are five (5) key factors that a FICO Score considers: (1) payment history; (2) amount of debt; (3) length of credit history; (4) new credit; and (5) credit mix.

29. Each of the five (5) factors is weighted differently by FICO.

30. In other words, thirty-five percent (35%) of a consumer's FICO Score relates to payment history, thirty percent (30%) relates to the amount of debt, fifteen percent (15%) relates to the length of credit history, ten percent (10%) relates to new credit, and the final ten percent (10%) relates to a consumer's credit mix, which is the different types of debts reported.

31. Payment history refers to whether a consumer has paid their bills in the past, on time, late, or missed payments. The more severe, recent, or frequent the late payment information, the greater the impact on a FICO Score. Public record items, such as bankruptcy, foreclosure, judgments, and wage garnishments are also considered part of a consumer's payment history.

32. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently this occurred, and how many delinquent accounts exist.

33. Once a delinquent account has been remedied, the longer the account stays current the more a consumer's FICO Score should increase.

34. FICO Scores are entirely dependent upon information provided by data furnishers ("DFs"), such as banks and other financial institutions, to CRAs.

35. A FICO Score is a summary of your credit report. In simple terms, the FICO Score is calculated by taking the five (5) factors (payment history, amount of debt, length of credit history, new credit, and credit mix) for each account in a credit report and calculating a three digit number for lenders to review. "When you apply for credit, lenders need a fast and consistent way to decide whether or not to loan you money." *See* https://www.myfico.com/credit-education/what-is-a-fico-score. If a lender or employer did look past the FICO Score into a consumer's reports, chances are they either do not understand the tradeline meanings themselves, or, if they do and

realize something appears incorrect, they are incapable of recalculating the complex mathematical algorithms in a FICO Score to take the found error into consideration. Therefore, most lenders and employers do not review individual accounts, just a consumer's FICO Score (or average of FICO Scores) in order to make "quicker decisions". *See id*.

36. Some lenders also use internal scoring models. In these instances, the lenders attempt to produce their own "FICO Score" based upon their internal credit scorecard models. These models are, similar to FICO, based upon algorithms, business rules, codes, etc. and take information reported in the credit reports and assign weights to them in order to assess risk and make determinations as to consumer's creditworthiness. FICO Scores and the scores based off internal models being collectively referred to as "Credit Score".

**B. e-OSCAR**

37. e-OSCAR is the web-based system developed by Experian, Equifax, TransUnion, and Innovis that enables DFs and CRAs to create and respond to consumer credit disputes.

38. When a consumer sends a dispute letter to a CRA, the CRA then sends an automated credit dispute verification ("ACDV") via e-OSCAR to the appropriate DF.

39. The ACDV contains codes next to certain data fields associated with a credit file.

40. When a data furnisher reports on a consumer's account as part of its regular reporting, it sends a regular monthly transmission to each CRA.

41. When a data furnisher reports on a consumer's account outside of its regular monthly transmission, it sends an automated universal dataform ("AUD") to each CRA.

42. For clarification, an AUD, or other regular transmission, is sent when the data furnisher initiates reporting on a consumer's account (e.g., opening an account, updating the account each month, closing an account, etc.), whereas an ACDV is how a data furnisher receives a dispute request from the CRAs and how it updates reporting back to the CRAs after its investigation of the matter.

**C. Plaintiff's Credit Reports Contains Inaccurate Adverse Tradelines, which Plaintiff Disputed to no Avail**

43. On January 18, 2022, Plaintiff ordered an Equifax credit report and a TransUnion credit report to ensure proper reporting by Plaintiff's creditors (the "January 18 Credit Reports").

44. Plaintiff noticed adverse tradelines in his January 18 Credit Reports, reporting inaccurate, misleading, or incomplete information that did not comply with FCRA standards.

45. Plaintiff then disputed the inaccurate tradelines regarding the account with U.S. Bank via certified mail to Equifax and TransUnion on or about January 26, 2022 (collectively referred to as the "Dispute Letters").

46. Plaintiff's Dispute Letters specifically put U.S. Bank on notice that Plaintiff's account should not be listed as past due as it has a zero balance, is closed, and that Plaintiff's account should be updated.

47. Plaintiff requested that any derogatory reporting be updated to ensure accuracy and completeness of the account as required by the FCRA.

48. Plaintiff is informed and believes that Equifax and TransUnion each received Plaintiff's Dispute Letters and, in response, sent Plaintiff's disputes to U.S. Bank, as the data furnisher, via an ACDV through e-OSCAR.

49. On March 11, 2022, Plaintiff ordered a second Equifax credit report and TransUnion credit report to determine if his account was updated.

    a. **Inaccuracy – U.S. Bank**

50. Despite actual knowledge, U.S. Bank continued to report Plaintiff's account, beginning in 512977XXX, to Equifax with a payment status of "Not more than two payments past due". This tradeline is patently inaccurate as the account was paid in full and fully satisfied on or about December of 2020.

51. Despite actual knowledge, U.S. Bank continued to report Plaintiff's account, beginning in 512977XXX, to TransUnion with a payment status of "30 days past due". This tradeline is patently inaccurate as the account was paid in full and fully satisfied on or about December of 2020.

52. Plaintiff alleges that U.S. Bank did not investigate whether Plaintiff previously satisfied the account.

53. U.S. Bank did not update the tradelines to reflect that Plaintiff satisfied the account, and that it was not past due nor was it past due when it reported in December of 2020.

54. Equifax and TransUnion both provided notice to U.S. Bank that Plaintiff was disputing the inaccurate and misleading information, but U.S. Bank failed to conduct a reasonable investigation of the information as required by the FCRA.

55. The most basic investigation would include a simple review of internal documentation on the account (i.e., payments, including final payment, and satisfaction) compared

to its reporting in order to determine if it complies with the maximum possible accuracy and completeness standard of the FCRA regarding how to report a debt paid in full.

56. Plaintiff alleges that U.S. Bank did not review if its reporting complied with the unambiguous language of the FCRA, regulatory guidelines on accurate reporting under the FCRA, or its own internal records concerning Plaintiff's account.

57. If U.S. Bank reviewed such standards, or its own internal records regarding Plaintiff's account, U.S. Bank would have seen that its reporting was not in compliance and was therefore patently inaccurate or incomplete.

58. In the alternative, if Defendants believed there was an amount remaining unpaid after the December 2020 payment, which Plaintiff denies, then said amount would have been included and discharged in Plaintiff's subsequent Chapter 7 bankruptcy filed on August 31, 2021, and discharged on December 8, 2021. Under this alternative scenario, Defendants should have reported the discharge, which it did not report.

59. By continuing to report Plaintiff's account to Equifax as described in paragraph 50 and to TransUnion as described in paragraph 51, it appears to third parties viewing Plaintiff's credit report that Plaintiff did not pay off the debt in full but instead is behind on his payments, which in inaccurate. In the alternative, it appears as if Plaintiff had an outstanding, unpaid balance at the time of account closure, which is inaccurate.

60. Past due debts are far more injurious to a credit score than a debt paid in full and satisfied. Further, as this inaccurate reporting is being used to calculate Plaintiff's Credit Score, the credit score alone being what most lenders and employers use to determine Plaintiff's creditworthiness, it is misleading in such a way as to adversely affect credit decisions.

61. As payment history (including payment status) makes up thirty-five percent (35%) of a consumer's FICO Score, and as most lenders approve or deny credit based on a consumer's credit score (as opposed to poring through each tradeline of every account listed to obtain context), the incorrect payment status reported by U.S. Bank on the account is lowering Plaintiff's Credit Score, which adversely affects Plaintiff's ability to obtain credit.

62. The lack of investigation and reporting of inaccurate and incomplete information by U.S. Bank is unreasonable.

D.  **Damages**

63. Plaintiff pulled the credit reports at issue at a cost for access to the reports, after the dispute process, specifically for the sole purpose of verifying that the inaccuracies were fixed.

64. As a result of the incorrect reporting, Plaintiff has incurred out-of-pocket expenses, and has also suffered emotional harm, physical sickness, and excessive stress resulting in doubt as to the effectiveness of the Bankruptcy Code, the Fair Credit Reporting Act, and the power of this Court to preserve and perpetuate a fresh start as intended by Congress.

65. Plaintiff has been denied credit and is unable to rebuild his credit based on the inaccurate reporting by U.S. Bank. Further, Plaintiff's diminished creditworthiness, resulting from U.S. Bank's inaccurate reporting, has caused him to abandon his intentions to apply for certain credit.

66. U.S. Bank's actions, as alleged herein, are in direct violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b).

**FIRST CAUSE OF ACTION**

**(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681e(b))**

**(Against Defendants and Does 1-100)**

67. Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

A.  **Equifax and TransUnion Each Failed to Assure Credit Reporting Accuracy**

68. Equifax and TransUnion (collectively "the CRA Defendants") each violated 15 U.S.C. § 1681e(b) by failing to establish and/or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and the credit files it published and maintained concerning Plaintiff.

69. Had Equifax maintained reasonable procedures to assure maximum accuracy, it would have never reported the U.S. Bank account as described herein.

70. Equifax knew, or should have known, (1) that the U.S. Bank account was current, paid in full, and fully satisfied, and (2) that the account should not have been reported with a payment status of "Not more than two payments past due" as the debt was current, paid in full, and fully satisfied in or about December of 2020. Further, Equifax knew, or should have known, that this inaccurate and incomplete tradeline does not reflect *maximum possible accuracy and completeness* as required by the FCRA.

71. Had TransUnion maintained reasonable procedures to assure maximum accuracy, it would have never reported the U.S. Bank account as described herein.

72. TransUnion knew, or should have known, (1) that the U.S. Bank account was current, paid in full, and fully satisfied, and (2) that the account should not have been reported with a payment status of "30 days past due" as the debt was current, paid in full, and fully satisfied in or about December of 2020. Further, TransUnion knew, or should have known, that this inaccurate and incomplete tradeline does not reflect *maximum possible accuracy and completeness* as required by the FCRA.

73. Congress specifically recognized the "elaborate mechanism developed for investigating and evaluating credit worthiness, credit standing, credit capacity, character, and general reputation of consumers."[2] The investigation and evaluation of Plaintiff's credit worthiness, credit standing, credit capacity, character and general reputation as a consumer are all damaged by the reporting that the CRA Defendants allowed.

74. As a result of the CRA Defendants' violations of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including but not limited to: damage to reputation, embarrassment, humiliation, dissemination of inaccurate information, diminished credit, and other mental and emotional distress.

**B.    Willful Violations**

75. The CRA Defendants' violations, as described herein, were willful; specifically, the CRA Defendants have intentionally and purposefully set up a system where inaccuracies are not only probable, but inevitable.

76. The CRA Defendants regularly, as a policy, ignore disputes by consumers and fail to perform even a basic investigation regarding the disputes. Additionally, the CRA Defendants regularly fail to forward disputes to data furnishers, thereby frustrating the entire dispute process.

77. To the extent the CRA Defendants do send consumer disputes, it sends these disputes to employees who do not live within the continental United States to hide or subvert a consumer's liability to confront the individual(s) directly responsible for approving accurate reporting.

78. The CRA Defendants' respective employees receive little to no training concerning how to accurately report consumer debt.

---

[2] *Nayab v. Capital One Bank (USA), NA*, 942 F. 3d 480, 492 (9th Cir. 2019).

79. Instead, the CRA Defendants' respective employees are instructed to parrot whatever information a data furnisher provides regardless of whether the information is accurate.

80. The CRA Defendants' respective employees are regularly expected to review and approve over ninety (90) disputes per day, rendering less than five (5) minutes to review, investigate, and respond to each dispute received.

81. The CRA Defendants have intentionally set up this system in order to undermine, hide, and otherwise frustrate consumers' ability to properly dispute and correct credit reports.

82. As a result of the CRA Defendants' violations of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including, but not limited to: damage to reputation, embarrassment, humiliation, dissemination of inaccurate information, diminished credit, and other mental and emotional distress.

83. The CRA Defendants' violations were willful, rendering each individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

84. In the alternative, the CRA Defendants were negligent, which entitles Plaintiff to recover under 15 U.S.C. § 1681o.

85. Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorneys' fees from the CRA Defendants in an amount to be determined by this Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## SECOND CAUSE OF ACTION

**(Violation of Fair Credit Reporting Act 15 U.S.C. §§ 1681s-2(b) and 1681i(a)(1))**

**(Against Defendants and Does 1-100)**

86. Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

**A. U.S. Bank Failed to Reinvestigate Following Plaintiff's Disputes**

87. Pursuant to 15 U.S.C. § 1681s-2(b), data furnishers are prohibited from providing any information relating to a consumer to any CRA if it knows, or has reasonable cause to believe, that the information is inaccurate or misleading and requires data furnishers to update and/or correct inaccurate information after a CRA notifies it of a consumer dispute.

88. Plaintiff alleges he fully satisfied his account in or about December of 2020. Plaintiff alleges his account was current in December of 2020 and was not past due. Plaintiff alleges his account was current at the time of final reporting and closure.

89. After the account was current and fully satisfied in or about December of 2020, U.S. Bank sent an AUD or monthly transmission to Equifax and TransUnion reporting the payment status at that point in time (i.e., post satisfaction) as past due.

90. After receiving the Dispute Letters, U.S. Bank did not correct the payment status, but instead verified and re-reported the payment status as past due via ACDVs to Equifax and TransUnion.

91. The payment status reported in an AUD, monthly transmission, or ACDV represents the status of the account at the time of sending the AUD, monthly transmission, or ACDV, and is not a historical contractual item (i.e., monthly payment, highest balance, payment history, etc.). Therefore, even in the event the account was previously past due, if at all, it has no bearing on its pay status *after* the account was current, paid in full, and fully satisfied.

92. U.S. Bank violated 15 U.S.C. § 1681s-2(b) by either failing to conduct an investigation or failing to conduct a reasonable investigation, and re-reporting misleading and inaccurate account information.

93. Equifax and TransUnion both provided notice to U.S. Bank that Plaintiff was disputing the inaccurate and misleading information; however, U.S. Bank either failed to conduct any investigation or failed to conduct a reasonable investigation as required by the FCRA.

94. Based on Plaintiff's disputes and review of its internal records on the account, U.S. Bank should have known its account was current, paid in full, and fully satisfied in or about December of 2020 and ceased its inaccurate reporting.

95. Reporting a current and fully satisfied and/or paid debt as past due is patently incorrect.

96. In addition, this inaccurate reporting also adversely affects credit decisions. This inaccurately reported account is being considered when calculating Plaintiff's Credit Score. Most lenders, employers, and other individuals who access a consumer's credit report approve or deny credit or employment based upon the reported credit score and do not take the time to look through each tradeline of every account listed to obtain context. Therefore, U.S. Bank's reporting as described herein has a direct adverse effect on Plaintiff's Credit Score and his ability to rebuild his credit score and obtain new credit.

97. The lack of investigation by U.S. Bank, as required by the FCRA, is unreasonable.

B.  **Willful Violations**

98. Plaintiff alleges that U.S. Bank has reported based upon objectively unreasonable interpretations of the FCRA standards of credit reporting and regulatory guidelines on how to accurately report under the FCRA.

99. Plaintiff further alleges that U.S. Bank has not properly trained those directly investigating disputes on FCRA requirements or credit reporting industry standards and, as such, has developed reckless policies and procedures.

100. Plaintiff alleges that rather than train its employees on accurate credit reporting, FCRA requirements, and industry standards, U.S. Bank's employees tasked with reviewing disputes are expected to confirm the information being reported as "accurate" instead of investigating the reporting.

101. In the alternative, U.S. Bank was negligent, which entitles Plaintiff to recover under 15 U.S.C. § 1681o.

C.  **Equifax and TransUnion Each Failed to Reinvestigate the Disputed Information in violation of 15 U.S.C. § 1681i(a)(1)**

102. Pursuant to 15 U.S.C. 1681i(a)(1), Equifax and TransUnion were required to conduct a reasonable investigation and to delete any information that was not accurate after receiving notice of Plaintiff's disputes regarding the U.S. Bank account.

103. Thus, the CRA Defendants each failed to conduct a reasonable investigation and correct the misleading and/or inaccurate statements on the account within the statutory time frame.

104. The CRA Defendants are not passive entities bound to report whatever information a data furnisher provides.

105. Plaintiff alleges the CRA Defendants are readily familiar with FCRA requirements and credit reporting industry standards.

106. Based on the foregoing, Plaintiff alleges that the CRA Defendants can, and do, suppress inaccurate information from being reported when data furnishers provide inaccurate information.

107. The CRA Defendants can and do instruct data furnishers on how to properly report certain accounts from time to time upon request from a data furnisher.

108. Equifax failed to conduct a reasonable investigation because any basic investigation would have uncovered that U.S. Bank was not reporting its account at issue correctly.

109. Had Equifax conducted a proper investigation, it could have closed or bookended the U.S. Bank debt by adding a notation on the credit report to show that the debt was in fact fully satisfied and not past due. However, Equifax continued to report the account as described herein.

110. In the alternative, Plaintiff alleges that Equifax did not send an ACDV to U.S. Bank to confirm accurate reporting on its account. Despite receiving the Dispute Letter providing notice of the inaccuracies, Equifax did not delete or correct the tradeline or conduct an investigation.

111. TransUnion failed to conduct a reasonable investigation because any basic investigation would have uncovered that U.S. Bank was not reporting its account at issue correctly.

112. Had TransUnion conducted a proper investigation, it could have closed or bookended the U.S. Bank debt by adding a notation on the credit report to show that the debt was in fact fully satisfied and not past due. However, TransUnion continued to report the account as described herein.

113. In the alternative, Plaintiff alleges that TransUnion did not send an ACDV to U.S. Bank to confirm accurate reporting on its account. Despite receiving the Dispute Letter providing notice of the inaccuracies, TransUnion did not delete or correct the tradeline or conduct an investigation.

114. The CRA Defendants, therefore, did not conduct even the most basic investigation regarding credit reporting industry standards, otherwise the aforementioned would have been uncovered.

115. In the alternative, if the CRA Defendants deemed Plaintiff's Dispute Letters "frivolous or irrelevant" under 15 U.S.C. 1681i(a)(3), the CRA Defendants failed to notify Plaintiff of such determination as required by 15 U.S.C. 1681i(a)(3)(B). As Plaintiff received no such notice from either of the CRA Defendants, Plaintiff alleges the CRA Defendants deemed his Dispute Letters valid, and thus triggered its obligations under 15 U.S.C. 1681i(a)(1) and (2)(A), for which neither complied.

## THIRD CAUSE OF ACTION

### (Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(4))

### (Against Defendants and Does 1-100)

116. Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

**A.     The CRA Defendants Each Failed to Review and Consider all Relevant Information**

117.    The CRA Defendants violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff.

118.    The CRA Defendants' violations of 15 U.S.C. § 1681i(a)(4) have caused Plaintiff to suffer actual damages, including, but not limited to: damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

**B.     Willful Violations**

119.    The CRA Defendants' violations were willful, rendering each individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

120.    In the alternative, the CRA Defendants were each negligent in failing to review and consider all relevant information Plaintiff submitted, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

121.    Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorneys' fees from the CRA Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## FOURTH CAUSE OF ACTION

### (Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(5)(A))

### (Against Defendants and Does 1-100)

122.    Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

**A.     The CRA Defendants Each Failed to Delete Disputed and Inaccurate Information**

123.    The CRA Defendants each violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation.

124.    The CRA Defendants' violations of 15 U.S.C. § 1681i(a)(5)(A) have resulted in Plaintiff suffering actual damages, including, but not limited to: damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

**B.     Willful Violations**

125.    The CRA Defendants' violations were willful, rendering each individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

126. In the alternative, the CRA Defendants were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

127. Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorneys' fees from the CRA Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## PRAYER FOR RELIEF

128. WHEREFORE, Plaintiff prays for judgment as follows:
    a. For preliminary and permanent injunctive relief to stop Defendants from engaging in the conduct described above;
    b. Award statutory and actual damages pursuant to 15 U.S.C. § 1681n;
    c. Award punitive damages in order to deter further unlawful conduct pursuant to 15 U.S.C. § 1681n;
    d. Award attorneys' fees and costs of suit incurred herein pursuant to 15 U.S.C. §§ 1681n and 1681o;
    e. For determination by the Court that Defendants' policies and practices are unlawful and in willful violation of 15 U.S.C. § 1681n, *et seq.*; and
    f. For determination by the Court that Defendants' policies and practices are unlawful and in negligent violation of 15 U.S.C. § 1681o.

Respectfully submitted,

**SCHUMACHER LANE PLLC**

Dated: April 27, 2022

*/s/ Kyle Schumacher*
Kyle Schumacher
kyle@schumacherlane.com
P.O. Box 558
Spring Branch, TX 78070
503-482-8137 ph
210-783-1383 fax
Attorneys for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial of this matter by jury.

**SCHUMACHER LANE PLLC**

Dated: April 27, 2022

*/s/ Kyle Schumacher*
Kyle Schumacher
Attorneys for Plaintiff